647 S.E.2d 179

**In the Matter of Eduardo CURRY, Respondent.**

**No. 26340.**

Supreme Court of South Carolina.

Heard April 3, 2007.

Decided June 11, 2007.

622

Henry B. Richardson, Jr., Disciplinary Counsel, and Barbara M. Seymour, of Columbia, for Office of Disciplinary Counsel.

Coming B. Gibbs, of Charleston, for Respondent.

PER CURIAM:

This is an attorney discipline case involving two separate instances of misconduct by respondent. The Commission on Lawyer Conduct Full Panel (Panel) adopted the report of the sub-panel, which recommended the following sanctions: (1) 30 day suspension; (2) respondent be required to obtain the services of a certified public accountant and an attorney to review compliance with Rule 417, SCACR; (3) respondent must submit affidavits from the CPA and attorney every six months for a period of three years to show compliance with Rule 417, SCACR; and (4) respondent be ordered to pay costs of proceedings.

The Office of Disciplinary Counsel (ODC) appeals and asks for a harsher sanction, contending the Panel erred in its findings on respondent's alleged Rule 403, SCACR, violations and in its consideration of certain mitigating circumstances. We agree with ODC and impose a six month suspension and the other conditions recommended by the Panel.

## FACTS

This proceeding involves two separate matters arising out of a complaint filed with the Commission in 2002. An investigative panel authorized formal charges in November 2004. The hearing before the sub-panel was held in April 2005, and due to delay in receiving the transcript, the report of the sub-panel was not issued until July 2006. In September 2006, the Panel adopted the report.

*Matter A*

This matter arises from a prior disciplinary action that ended in 2001 with a deferred disciplinary agreement (DDA). The DDA concerned respondent's failure to obtain Rule 403 certification. A complaint had been filed against respondent for appearing in court without Rule 403 certification, but respondent asserted in 2001 that he had complied with the rule. However, no certification could be found in the Court's files.

The DDA prevented respondent from appearing in court without meeting the requirements of Rule 403. It did not order respondent to obtain the trial experiences and certification required by Rule 403, but if he did, respondent was required to file an affidavit and a copy of his compliance certificate with ODC. This agreement was accepted by the Commission on July 20, 2001.

We must now determine whether respondent's conduct after 2001 violated the terms of his DDA and Rule 403. In an attorney disciplinary proceeding, this Court gives great deference to the recommendation of the Panel. *In re Myers,* 355 S.C. 1, 584 S.E.2d 357 (2003). However, we exercise de novo review of the Panel's findings of fact and conclusions of law. *Id.*

Rule 403(a), SCACR, provides:

[A]n attorney shall not appear as counsel in any hearing, trial, or deposition in a case ... until the attorney's trial experiences required by this rule have been approved by the Supreme Court. An attorney whose trial experiences have not been approved may appear as counsel if the attorney is accompanied by an attorney whose trial experiences have been approved by this rule ... and the other attorney is present throughout the hearing, trial, or deposition.

Furthermore, we have previously disciplined an attorney for, among other ethical violations, appearing in court without proper certification under Rule 403. *In re Moore,* 345 S.C. 144, 546 S.E.2d 651 (2001). We noted in *Moore* that, absent Rule 403 certification, a lawyer is not entitled to

"appear alone in courts of record in South Carolina." *Id.* at 149, 546 S.E.2d at 653.

After the complaint was filed in 2002, ODC reviewed respondent's file and found no affidavit or certificate of compliance with Rule 403. Upon written inquiry by ODC, respondent responded that he had not completed his Rule 403 requirements and that he had not appeared alone in a trial. Respondent did inform ODC that he was in the process of obtaining certification. However, respondent later admitted that he appeared alone at depositions.

Upon investigation, ODC alleged ethical violations in respondent's efforts to obtain Rule 403 certification. Several attorneys testified at the sub-panel hearing in regards to this matter.

Attorney A testified that he worked as co-counsel with respondent in two cases. However, Attorney A was not aware that respondent lacked Rule 403 certification, that respondent considered his presence to be for the purpose of Rule 403 compliance, nor did respondent ever ask Attorney A to appear specifically as Rule 403 counsel.

Attorney B testified that he appeared with respondent at one or two hearings, two or three guilty pleas, and one deposition. Attorney B was not aware that respondent lacked Rule 403 certification and did not consider his presence to be for respondent's compliance with Rule 403.

Attorney C, respondent's law partner, testified that he attended numerous hearings, trials, and depositions with respondent for the purpose of acting as respondent's Rule 403–certified co-counsel. However, Attorney C testified that he sat in the audience and did not participate in the proceedings. He also acknowledged that there were occasions where respondent asked him to go to court and he was not available.

The Panel then identified four different circumstances involving respondent that potentially violated Rule 403 and respondent's DDA.

The first circumstance identified by the Panel was respondent's appearance at depositions without a Rule 403–certified attorney. Respondent admitted to appearing alone at depositions but indicated he relied upon the DDA language which

only prohibited solo appearances "in court." The Panel noted that respondent was required to comply with Rule 403, and his failure to insure strict compliance violated the rule. This finding is not in dispute.

The second circumstance was respondent's appearance alone at status and pre-trial conferences, roll calls, and roster meetings. The Panel concluded that respondent's conduct did not violate Rule 403 and the DDA. Citing the ambiguity between pre–2000 Rule 403 ("actual conduct and trial of a case"), post–2000 Rule 403 ("hearing, trial, or deposition"), DDA ("will not appear in court"), and *In re Moore* ("courts of record"), the Panel found that Rule 403 did not specifically prohibit appearances at these types of hearings.

ODC objects to this finding of the Panel. ODC posits that no ambiguity exists because appearances at pretrial and status conferences are appearances in court, which are prohibited by the DDA, *Moore*, and Rule 403.[1] In addition, ODC contends that even if the rule were unclear, the DDA clearly prohibited appearances in court. We agree with ODC.

██ Rule 403 ("hearings") and the DDA ("will not appear in court") clearly encompass respondent's appearance at pretrial and status conferences. The appearances at these official court proceedings were prohibited by the language of the DDA and Rule 403, and respondent violated the rule and the DDA by appearing in these situations.

The third questionable action identified by the Panel was respondent's appearances with Rule 403–certified co-counsel. ODC asserted that attendance by co-counsel does not satisfy Rule 403 if the certified counsel is unaware that he is present for purposes of Rule 403. The Panel decided that neither Rule 403 nor prior case law require knowledge by the certified co-counsel of the uncertified attorney's lack of Rule 403 certification. The Panel found that it could not rewrite the rule or the DDA to require knowledge by the accompanying attorney, and it concluded that the mere appearance of a certified attorney met respondent's requirements.

---

1. We agree with ODC that the pre–2000 version of Rule 403 that was in effect prior to the DDA and prior to the appearances that are at issue in this action is not relevant to our analysis.

ODC objects to this finding, arguing that the purpose of Rule 403 is defeated if certified co-counsel is unaware that he is considered present pursuant to Rule 403. We agree.

Respondent admitted he did not inform the attorneys who accompanied him that their presence was needed for compliance with Rule 403. This defeats the purpose of Rule 403. The rule allows an attorney to gain trial experiences by actively participating in court proceedings while in the presence of a certified attorney who is available to assist when necessary. A certified attorney's "presence" means more than mere physical presence; he must be aware of his reason for being present so that he is prepared to aid the uncertified attorney. We find the Panel erred in failing to find respondent in violation of Rule 403 for these appearances when certified counsel was not made aware of the reason for their presence.

The final circumstance involved respondent's appearances with Attorney C, who knew his presence was for respondent's compliance with Rule 403. Attorney C admitted that on several occasions he had occupied himself with his own clients' business while respondent was in court. The Panel found that Attorney C's presence and ability to provide guidance if needed, along with his knowledge that he was respondent's certified co-counsel, complied with the rule and the DDA.

ODC objects to this finding, arguing that the requirement of a Rule 403–certified counsel to be present throughout the proceeding means more than physical presence. ODC argues that if Attorney C occupied himself with his own business, respondent did not have a certified attorney "present" in the mental sense. We agree.

Much like the certified attorney who is less prepared to assist because he is unaware the attorney is attempting to acquire Rule 403 certification, a certified attorney who tends to his own business is not "present" for purposes of Rule 403.

We find that respondent's actions in these four situations constituted a willful violation of his prior DDA and Rule 403.

## Matter B

This matter arises from a complaint filed by Doctor A, a chiropractor, who treated several of respondent's clients for injuries related to personal injury claims. Doctor A alleged that respondent failed to pay medical bills on behalf of clients following successful resolution of their cases.

Upon receiving notice of Doctor A's grievance, respondent issued checks from his trust account for the amounts claimed by Doctor A for each client. Respondent did not review his client files or trust account records before writing the checks. In two cases, respondent issued checks on behalf of clients, yet no funds were held in his trust account for those clients.

In two other instances, respondent had not sent checks to Doctor A even though his client ledgers and settlement statements showed that the checks had been written. Additionally, in the nine to ten months between the time respondent allegedly wrote the checks and the time he actually sent the checks to Doctor A, respondent's trust account balance dropped numerous times below the amount he was holding on behalf of these clients. Respondent claimed he paid Doctor A out of fees earned for other clients but not yet withdrawn from his trust account. After investigation, ODC found numerous violations involving respondent's trust account and recordkeeping. The findings by the Panel in regards to Matter B are not in dispute.

■ Upon the commencement of formal proceedings against respondent, he admitted the following: (a) he failed to reconcile his trust account on a monthly basis; (b) he failed to withdraw fees from his trust account when earned; (c) he failed to keep records of earned fees remaining in his trust account; (d) he routinely paid law firm expenses, including payroll, from his trust account; (e) he routinely paid personal expenses, including credit card and phone bills, from his trust account; (f) he failed to maintain an accurate and current accounting journal; and (g) he routinely advanced litigation costs for clients from his trust account when no funds were deposited for that purpose.

Respondent violated the following Rules of Professional Conduct found in Rule 407, SCACR, with regard to Matter B: Rule 1.15(a) (lawyers must hold client funds separately and

maintain a complete record of those funds); Rule 1.15(b) (possession of funds in which a third party has an interest); Rule 1.3 (diligence); Rule 4.4 (respect for rights of third persons); Rule 5.1 (responsibilities of partner or supervisory lawyer); Rule 5.3 (responsibilities regarding nonlawyer assistants); and Rule 8.1 (misrepresentation in disciplinary matter). The Panel also found violations of Rule 417, SCACR, for respondent's financial recordkeeping deficiencies.

## Mitigating Circumstances

In 2002, the Internal Revenue Service (IRS) improperly levied on just over $5,000 from respondent's trust account for failure to pay quarterly payroll taxes. The IRS should have levied respondent's operating account. Respondent could not recall when the money was returned.

The Panel noted that respondent had no control over an IRS levy against his trust account, and the Panel viewed the IRS levy as mitigating evidence. ODC objects to this finding, arguing that the negative client balances in the trust account for two of respondent's clients occurred before the IRS levy and continued after the money was returned. In addition, the IRS levy resulted from respondent's own failure to pay taxes, and ODC alleges that respondent failed to discover the levy because he did not reconcile his trust account. Finally, ODC contends that respondent should have immediately replenished the missing funds from his trust account with his personal funds.

We believe the erroneous levy by the IRS on respondent's trust account was unexpected and unpreventable. We keep it in mind when determining a proper sanction.

The Panel also noted the substantial delay in the disciplinary proceedings as evidence of mitigation. The grievance was filed and investigation began in 2002, formal proceedings began in 2004, and the hearing was held in 2005. Due to delays in obtaining the transcript, the sub-panel report was not issued until July 2006.

ODC objects to the finding of a substantial delay in the proceedings and challenges the use of such a factor in mitigation. ODC cites the fact that problems concerning respondent's trust account did not appear until after the investigation

had begun into Doctor A's complaint. ODC also noted that respondent's assurances that he was still in compliance with the DDA prevented investigation of Matter A until 2004. Furthermore, ODC contends that much of the delay was due to respondent's failure to supply adequate financial records and ODC's difficulty in reconstructing trust account transactions. ODC acknowledges the delay in obtaining the transcript of the hearing and in drafting the sub-panel report but maintains such delay is not attributable to either party.

We agree with ODC that the substantial delay in the proceedings is not attributable to respondent or to ODC. We do not consider the delay to be an aggravating or a mitigating circumstance.

## CONCLUSION

ODC objects to the Panel's recommendation of a thirty day suspension. Citing past cases, ODC seeks a harsher sanction for respondent's misconduct. We are not bound by the Panel's recommendation but rather administer the sanction we deem appropriate after a thorough review of the record. *In re Strickland*, 354 S.C. 169, 580 S.E.2d 126 (2003).

Although we are aware of respondent's good reputation and positive achievements, we cannot overlook the serious violations that have occurred. Accordingly, we adopt all sanctions recommended by the Panel and increase respondent's suspension from the practice of law to six months. Within sixty (60) days of the filing of this opinion, respondent shall pay costs associated with this proceeding in the amount of $2645.11. Within fifteen (15) days of the filing of this opinion, respondent shall file an affidavit with the Clerk of Court showing that he has complied with Rule 30, RLDE, Rule 413, SCACR.

**DEFINITE SUSPENSION.**

TOAL, C.J., MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.